**MICHAEL N. FEUER,** City Attorney
**KATHLEEN A. KENEALY**, Chief Assistant City Attorney (212289)
**SCOTT MARCUS**, Senior Assistant City Attorney (SBN 184980)
**CORY M. BRENTE,** Senior Assistant City Attorney (SBN 115453)
**CHRISTIAN R. BOJORQUEZ,** Deputy City Attorney (SBN 192872)
200 N. Main Street, 6th Floor, City Hall East
Los Angeles, California 90012
Tel: (213) 978-7023; Fax: (213) 978-8785
Email: christian.bojorquez@lacity.org

Attorneys for Defendants CITY OF LOS ANGELES and JASON CURTIS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. MELINA ABDULLAH,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES; CHARLES LLOYD BECK; JASON CURTIS; and DOES 1 through 20, Inclusive,<br><br>Defendants. | **Case No. CV20-01329 SVW (MAAx)**<br>*Hon Judge: Stephen V. Wilson; Crtm 10A*<br>*Hon Magistrate Judge: Maria A. Audero*<br><br>**DEFENDANTS CITY OF LOS ANGELES AND JASON CURTIS' MEMORANDUM OF CONTENTIONS OF FACT & LAW** |

COMES NOW Defendants CITY OF LOS ANGELES and JASON CURTIS, provide the following Memorandum of Contentions of Fact & Law:

///
///
///
///
///

1

# I. STATEMENT OF FACTS

On May 8, 2018 at 09:30 am, the City of Los Angeles, Board of Police Commissioners, held a public meeting within the Police Commission boardroom, located in the Los Angeles Police Department's (LAPD) Headquarters Building (PAB), at 100 West 1st Street, Los Angeles, California 90012. Chief Charlie Beck, along with other appointed Police Commissioners were present and seated in their designated positions at the dais. Pursuant to Police Commission policy, this meeting was open to public attendance.

During the meeting, an individual was arrested for Battery on a Police Officer after she discarded an unknown powdery substance at Chief Beck's seated position. Shortly thereafter, Plaintiff Abdullah was arrested for Battery on a Police Officer after she forcibly grabbed the right bicep/inner elbow of Detective Jason Curtis as he was escorting the original person that had thrown the substance from the boardroom.

Defendant Curtis had been assigned to a security detail at the Police Commission meeting. Curtis was dressed in full "Class A" police uniform and he was maintaining a standing position in the back of the boardroom, when his attention was drawn to a disruptive woman, who was seated toward the front of the dedicated public seating area. Curtis recognized the woman. Due to her continuous disruptions, Steve Soboroff, President of the Los Angeles Board of Police Commissioners, ordered Ms. Richards to vacate the meeting. As is customary, Curtis advanced toward the front of the boardroom to assist in escorting the individual out of the room and Curtis followed and monitored the individual's behavior. While doing so, Curtis explained he was unable to see the Police Commissioners' seated at the dais because he was facing in the opposite direction. However, he heard what sounded as a disruption occurring in the front of the boardroom. The sound of yelling caused Curtis to turn and look toward the front of the room. Upon doing so, he observed a woman, who he recognized yelling in the direction of Chief Beck and the other Commissioners.

After President Soboroff ordered this individual to leave the meeting, Curtis heard this individual yell, 'I'm leaving!" Curtis then heard Chief Beck say, "Take her into custody." Curtis responded to Chief Beck's direction by pointing in the direction of the individual, hoping to verify she was the person to be taken into custody. After receiving confirmation, Curtis grabbed ahold of this individual's hands and held them behind her back *(unhandculfed)* as he escorted her toward the back of the room.

Upon reaching the back of the room, Curtis observed a woman, whom he identified as "Melina" (Plaintiff) in the proximity of the rear door.  As members of the public crowded around Curtis and the individual he was escorting in the rear of the boardroom, Curtis heard Plaintiff yell, "Don't touch her! Don't touch her!"  Curtis then felt someone grab his right bicep/crux of his arm with a firm grip and he immediately glanced to his right and noticed that Plaintiff was the person who was grabbing ahold of his arm.  Curtis managed to break free from Plaintiff's grasp without being injured and/or further escalation and continued escorting the individual out of the boardroom.  Curtis explained that during his current assignment at Commission Investigation Division, he has become familiar with the appearance and the voice of Plaintiff and that she is a regular attendee at the weekly Police Commission meetings. Curtis recalled this was not the first time Plaintiff and others had been disruptive and evicted from a meeting. Based on the prior disruptive behavior and actions, Curtis opined Plaintiff intentionally interfered with his arrest efforts when she grabbed his arm.  Plaintiff was subsequently taken into custody by officers assigned to the security detail.

## II. MEMORANDUM OF CONTENTIONS OF LAW

### A.   *City Defendants Were Justified in Investigating This Incident*

The proper inquiry for an investigative detention is not whether there was probable cause, which applies to full custodial arrests, but rather whether or not there was a reasonable suspicion of criminal activity. *Berkemer v. McCarthy,* 468 U.S. 420, 439, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984).  Accordingly, the initial stop must have been justified at its inception, and the officers' actions during the detention must have been

3

reasonably related in scope to the circumstances justifying the interference. *Terry v. Ohio,* 392 U.S. 1, 20, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Consequently, a detention to investigate the possible subject suffering from a mental illness was entirely reasonable, justified and appropriate. *Whren v. United States,* 517 U.S. 806, 810, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996) (stating that a stop is reasonable where police have probable cause to believe that a traffic violation was committed).

Ultimately, a detention is reasonable under the Fourth Amendment if the detaining officer has a reasonable suspicion to believe that criminal activity may be occurring, has already taken place or was about to. *Illinois v. Wardlow,* 528 U.S. 119, 123-124 (2000). The standard set forth as "reasonable suspicion" requires much less evidence than that of the "probable cause" standard," and even less than the preponderance of the evidence. *Illinois v. Wardlow,* 528 U.S. 119, 123-124 (2000). Interestingly, there is no bright-line rule to determine when an investigatory stop or its functional equivalent becomes an arrest. *United States v. Parr,* 843 F.2d 1228, 1231 (9th Cir. 1988). Rather, in determining whether stops have turned into arrests, Courts consider the "totality of the circumstances." *United States v. Del Vizo,* 918 F.2d 821, 824 (9th Cir. 1990).

In looking at the totality of the circumstances, Courts consider both the intrusiveness of the stop, and the justification for the use of certain tactics, i.e. whether the officer had sufficient basis to fear for his safety to warrant the intrusiveness of the action taken. *United States v. Jacobs,* 715 F.2d 1343, 1345-46 (9th Cir. 1983) (per curiam). "The relevant inquiry is always one of reasonableness under the circumstances." *Allen v. City of Los Angeles,* 66 F.3d 1052 (9th Cir. 1995) (quoting *United States v. Sanders,* 994 F.2d 200, 206 (5th Cir.), *cert. denied*, 510 U.S. 1014 (1993)). In *Washington v. Skystone-Eagle,* 98 F.3d 1181 (9th Cir. 1996) the court described the standard as such:

> Even though the officers may not have sufficient cause to make an arrest, they may have to take particular measures to protect themselves during the course of the stop. As a result, we allow intrusive and aggressive police conduct without deeming it an arrest in those circumstances when it is a

> reasonable response to legitimate safety concerns on the part of the investigating officers . . . It is because we consider both the inherent danger of the situation and intrusiveness of the police action, that pointing a weapon at a suspect and handcuffing him, or ordering him to lie on the ground, or placing him in a police car will not automatically convert an investigatory stop into an arrest that requires probable cause.

*Washington, supra*, at 1186 (holding that officers's actions amounted to an arrest where arrestees were cooperative and where physical similarities between robbery suspects and arrestees were vague and inaccurate, police ordered the men out of their vehicle at gunpoint, handcuffed them, placed them in separate vehicles, and where the ratio of officers and police dog was disproportionate to the two arrestees).  Moreover, there is "no per se rule that detention in a patrol car constitutes an arrest." *United States v. Parr,* 843 F.2d 1228, 1230 (9th Cir. 1988); See also *United States v. Torres-Sanchez,* 1996 U.S. App. LEXIS 17314 (concluding that detention did not turn into de facto arrest when officer asked nervous passenger to enter patrol car to confirm or dispel his suspicion that vehicle stolen when vehicle had no license plates and no registration could be produced).

Specifically, in this instance, the initial detention/contact carried with it the right of the Defendant Officers to utilize some amount of force because of officer safety concerns and the actions of Plaintiff Abdullah.  As Officers were attempting to carry out official police duties regarding another individual, Plaintiff Abdullah unsuccessfully attempted to interfere with the Officers while engaging in lawful actions, coupled with the fact that Plaintiff Abdullah also became increasingly uncooperative to the Officers.  This was not the first occasion where this behavior happened.

**1.   Arrest:**

The United States Supreme Court has held that a police officer has probable cause to arrest a suspect "if 'at the moment the arrest was made ... the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing'" that a violation of the law has occurred. *Hunter v. Bryant,* 502 U.S. 224, 228, 112 S. Ct. 534, 116 LEd.2d 589

(1991) (per curiam) (quoting *Beck v. Ohio,* 379 U.S. 89, 91, 85 S. Ct. 223, 13 L.Ed.2d 142 (1964) (emphasis added).

If the facts known to a police officer support a search or seizure, it does not matter that the officer acts under an incorrect theory of legal justification. **It is not essential that an arresting or searching officer have a subjective belief that the arrestee is guilty of a particular crime or that the search is being conducted on the basis of a particular legal theory so long as the objective facts, when fully determined, afford justification**. *Scott v. United States,* 436 U.S. 128, 138 (1978).

Moreover, there is "no per se rule that detention in a patrol car constitutes an arrest." *United States v. Parr,* 843 F.2d 1228, 1230 (9th Cir. 1988); See also *United States v. Torres-Sanchez,* 1996 U.S. App. LEXIS 17314 (concluding that detention did not turn into de facto arrest when officer asked nervous passenger to enter patrol car to confirm or dispel his suspicion that vehicle stolen when vehicle had no license plates and no registration could be produced). The initial detention/arrest carried with it the right of the Defendant Officers to utilize some amount of force because of officer safety concerns and the actions of Plaintiff Abdullah. Ultimately, based upon Plaintiff Abdullah's intentional interference, Defendants had no alternative but to react to her unreasonable, irrational and obstructive actions, ultimately forcing Defendants to take her into custody.

    **2.    Officers Are Entitled To Immunity Re: The Arrest**

In Saucier v. Katz, 533 U.S. 194,121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001), the Supreme Court revisited qualified immunity because courts were avoiding making qualified immunity decisions where triable issues of fact existed. "Courts may not simply stop with a determination that a triable issue of fact exists as to whether the [] officials [acted unconstitutionally]; instead, the qualified immunity inquiry is separate from the constitutional inquiry." *Marquez v. Gutierrez,* 322 F.3d 689, 693 (9th Cir. 2003)(quoting *Estate of Ford v. Ramirez-Palmer,* 301 F.3d 1043, 1053 (9th Cir. 2002). To decide whether a defendant is protected by qualified immunity, a court must first determine whether, "[t]aken in the light most favorable to the party asserting the injury,

do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier, supra,* 533 U.S. at 201. If the plaintiff's factual allegations do add up to a violation of her federal rights, then the court must proceed to determine whether the right was "clearly established." The "clearly established" inquiry must be "undertaken in light of the specific context of the case, not as a broad general proposition . . . ," with the focus being on "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Ibid.*

Under the first prong of the qualified-immunity analysis, the City Defendants' arrest of Plaintiff did not violate a constitutional right. Arresting officers have probable cause if, at the moment of arrest & or search, "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrested person or the place to be searched] had committed or was committing an offense [or evidence of a crime was present]." *Beck v. Ohio,* 379 U.S. 89, 91, 13 L. Ed. 2d 142, 85 S. Ct. 223 (1964). In applying these standards, a court must consider "all the facts known to the officers and consider all the reasonable inferences that could be drawn by them before the [search and/or] arrest." *United States v. Martin,* 509 F.2d 1211, 1213 (9th Cir. 1975)(citations omitted). "[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment . . .." *Hill v. California,* 401 U.S. 797, 804, 91 S.Ct. 1106; 28 L.Ed. 2d 484 (1971). Moreover, Section 1983 liability cannot be based on claims of negligent protection of individuals' civil rights. *Daniels v. Williams,* 474 U.S. 327, 106 S. Ct. 662, 88 L.Ed. 2d 6660 (1986).

### 3. **Plaintiff Cannot Rebut the Presumption That the Prosecution Exercised Independent Judgment in Filing Initially Against Plaintiff**

In order to rebut the presumption a prosecuting attorney exercised independent judgment in deciding to file criminal charges against an individual, the individual has the burden of producing evidence "that the district attorney was subjected to unreasonable pressure by the police officers, or that the officers knowingly withheld relevant

information with the intent to harm [the individual], or that the officers knowingly supplied false information . . ." *Smiddy v. Varney,* 803 F.2d 1469, 1471 (9th Cir. 1986)("Smiddy II").  Plaintiff must prove that City Defendants knowingly withheld relevant information or knowingly supplied false information.

### 4. Defendants May Be Entitled to Absolute Immunity for Portions of Investigation

While law enforcement officers are not usually entitled to absolute immunity, but rather qualified immunity, it is a well-accepted principle that investigators are protected by absolute immunity in instances when they gathered evidence to support the prosecution's case on the underlying criminal case against a suspect. *KRL v. Moore,* 384 F.3d 1105, 1113 (9th Cir. 2004).  Ultimately, in making this determination, a Court must focus on the nature of the function performed, rather than the title/position of the actor who performed it. *Ibid.* ; see also, *Buckley v. Fitzsimmons,* 509 U.S. 259, 275, 125 L. Ed. 2d 209 (1993).  As a result, when an investigator gathers evidence in order to prepare the prosecutor for trial, the Courts hold that such investigator is engaged in a function associated with the judicial process, and is therefore entitled to absolute immunity. *KRL v. Moore,* 384 F.3d 1105, 1113 (9th Cir. 2004); see also, *Imbler v. Pachtman,* 424 U.S. 409, 430, 47 L. Ed. 2d 128 (1974).

### 5. Officers Are Insulated from Liability:

"In the context of law enforcement, the federal courts are largely in accord that, consistent with the principles of tort law, the chain of causation set in motion by the initial act of misconduct of one actor can be broken by the acts of a third party." *Alvarez-Machain v. United States,* 331 F. 3d 604, 636 (9th Cir. 2003).  "[P]olice officers have been held to be insulated from liability for deprivations of liberty wherever there are independent, intervening acts of other decision-makers in the criminal justice system, such as prosecutors, grand juries, or judges." *Id.* citing *Heck v. Humphrey,* 512 U.S. 477, 484 (1994) ("If there is a false arrest claim, damages for that claim cover the time of detention up until the issuance of process or arraignment, but not more." (quoting W.

Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser & Keeton on the Law of Torts 888 (5th ed. 1983)); *Townes v. City of New York,* 176 F. 3d 138, 147 (2d Cir. 1999) (holding judge's decision not to suppress evidence, though erroneous, broke the chain of causation for purposes of police officer's liability); *Barts v. Joyner,* 865 F. 2d 1187, 1195 (11th Cir. 1989) (holding that intervening acts of prosecutor, grand jury, and judge broke the chain of causation); *Hand v. Gary,* 838 F. 2d 1420, 1427-28 (5th Cir. 1988) (holding that sheriff's actions were not the proximate cause of damages given intervening acts of federal agents, federal prosecutors, and grand jury).

Similarly, in *Smiddy v. Varney,* 665 F. 2d 261, 266 (9th Cir. 1981), the Court held that the "filing of a criminal complaint immunizes investigating officers . . . from damages suffered thereafter because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time." The presumption of prosecutorial independence could be rebutted by "a showing that the [prosecutor] was pressured or caused by the investigating officers to act contrary to his independent judgment," or by "the presentation by the officers to the [prosecutor] of information known by them to be false." *Id.* at 266-67.

### III. EVIDENTIARY PROBLEMS

Not known at this time.

### IV. BI/TRIFURCATION OF ISSUES

City Defendants request that the issues of liability and compensatory damages be tried separately from the issues of punitive damages. In the furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, the court may order a separate trial of any claim or of any separate issue. F.R.Civ.P. 42(b). In this case, trying liability and compensatory damages issues separate from punitive damage issues fosters convenience and is conducive to the expeditious and

9

economical trial of this action. There is no need to reach the punitive damage phase of the case until liability has been established and the only question that should proceed to the jury is the predicate punitive damage question.

## V. JURY TRIAL

City Defendants have timely demanded a trial by jury.

## VI. ATTORNEYS FEES

City Defendants submit that the prevailing party upon a civil rights cause of action is entitled to attorney's fees pursuant to 42 U.S.C. Section 1988.

## VII. ABANDONMENT OF ISSUES

Not known at this time.

DATED: September 28, 2020

MICHAEL N. FEUER, City Attorney
KATHLEEN A. KENEALY, Chief Assist. City Attorney
SCOTT MARCUS, Senior Assistant City Attorney
CORY M. BRENTE, Senior Assistant City Attorney

By: /s/ *Christian R. Bojorquez*
CHRISTIAN R. BOJORQUEZ, Deputy City Attorney
Attorneys for Defendants CITY OF LOS ANGELES and JASON CURTIS