CARL E. DOUGLAS, Esq. (SBN: 097011)
Carl@DouglasHicksLaw.Com
JAMON R. HICKS, Esq. (SBN: 232747)
Jamon@DouglasHicksLaw.Com
**DOUGLAS / HICKS LAW, APC**
5120 W. Goldleaf Circle, Suite 140
Los Angeles, California 90056
Tel: (323) 655-6505
Fax: (323) 927-1941

Attorneys for Plaintiff,
DR. MELINA ABDULLAH

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. MELINA ABDULLAH, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES; CHARLES BECK; JASON CURTIS; and DOES 1 through 20,<br><br>Defendants. | CASE NO.: 20-CV-01329 SVW (MAAx)<br>*Hon. Judge: Stephen V. Wilson; Crtm 10A*<br>*Hon. Magistrate Judge: Maria A. Audero*<br><br>**PLAINTIFF'S AMENDED TRIAL BRIEF**<br><br>Trial Date:   March 23, 2022<br>Time:         9:00 a.m.<br>Courtroom:  10A |

**COMES NOW**, Plaintiff DR. MELINA ABDULLAH ("Dr. ABDULLAH"), by and through her counsel of record, Douglas / Hicks Law, and hereby provides the following Amended Trial Brief:

/ / /

/ / /

/ / /

1
PLAINTIFF'S AMENDED TRIAL BRIEF

## I. STATEMENT OF FACTS

On or about May 8, 2018, at around 10:20 a.m., Dr. ABDULLAH is lawfully entering a public meeting of the Police Commission, located at 100 W. First St. Los Angeles, CA. 90012, when she sees a commotion unfolding towards the front to the auditorium. Police Commissioner Steve Soboroff directs officers to remove Mrs. Jasmyne Richards ("Mrs. Richards") a member of the public from the room. Dr. ABDULLAH had not walked far into the room as officers begin removing Mrs. Richards.

Dr. ABDULLAH turns and watches Mrs. Richards and the officers as they escort her out. Another member of the public, a white woman named Gina Viola Peake, stands up to watch what is happening as the police are escorting Mrs. Richards out. An individual named Sheila Hines-Brim ("Mrs. Brim"), a relative of Wakeisha Wilson who died in police custody, allegedly throws an unknown powdery substance at Police Chief CHARLIE BECKS while he was seated at the dais at the front of the room.

Chief BECKS orders officers to remove Ms. Brim from the room. As LAPD officers escorted Mrs. Richards and Mrs. Brim out of the room, officers blocked other members of the public from leaving. Ms. Peake repeatedly tries to push her way past the officers blocking the exit. An officer warns Ms. Peake that she will be arrested for assaulting an officer if she continues trying to push her way past again. Despite this warning, Ms. Peake once more attempts to push her way past the officer. At about the same time, Dr. ABDULLAH is attempting to videotape the removal of Mrs. Richards and Mrs. Brim.

Shortly after Ms. Peake's final attempt to push past the officer, Defendant JAMES CURTIS yells "Get Melina!" Defendant CURTIS and others reach over Ms. Peake to grab Dr. ABDULLAH and place her into custody. As she is being arrested, Dr. ABDULLAH tosses personal items including her purse and cellphone to Ms.

Peake. Defendants CURTIS warns Ms. Peake that she could be arrested for assault. Ms. Peake tries to grab Dr. ABDULLAH's phone.  Ms. Peake then attempts to pull it out of the officers' hands and plays "tug of war" with the phone before Defendant CURTIS releases the phone.

Officers hear CURTIS' direction and arrests Dr. ABDULLAH for battery on a police officer. Defendant CURTIS falsely alleges that as CURTIS was escorting Ms. Brim out of the Police Commission hearing room, DR. ABDULLAH interfered and obstructed his efforts to arrest Ms. Brim by grabbing his right bicep with a firm "C" grip.  CURTIS claims Dr. ABDULLAH's efforts briefly caused him to lose his grip on Ms. Brim as he was escorting her out of the room.

In truth and in fact, Dr. ABDULLAH never touched Defendant CURTIS as he was leaving the Commission hearing room. In truth and in fact, although more than eight police officers were interviewed who witnessed Brim and Richards being escorted out of the hearing room, no one else ever reported Dr. ABDULLAH grabbing Defendant CURTIS' arm as he alleged. In truth and in fact Defendant CURTIS maliciously, deliberately, and intentionally accused Dr. ABULLAH of assaulting and battering him knowing that allegation was false.

Indeed, Ms. Peake repeatedly told arresting officers that day that she, rather than Dr. ABDULLAH, was the person who had come into contact with the Defendant CURTIS' arm. In fact, in one of the exhibits that she will identify in trial is a photograph of her speaking to journalists later that day about her having grabbed the officer's arm, for which Dr. ABDULLAH had been wrongfully arrested.

Dr. ABDULLLAH was held for more than seven hours in police custody. She was moved three different times. The first officer asked her, "Just tell me Doc, was it poison?"  She had not seen the Brim incident, so she was unaware of what that officer was asking about.

/ / /

/ / /

Officers then took her still in handcuffs to a room on the top floor of the police headquarters labeled "Hard Interrogation," raising her anxiety, and causing her severe emotional distress. She was held there for hours, but was never told by anyone the reason for her detention and arrest, increasing her confusion, concerns, and anxiety.

Although she agreed to waive her Miranda rights and answered every question asked of her, one of the interrogating officers, Det. Salaam Abdul-Rahman, was berating her during this interview, not about any alleged battery. Instead, this African American detective was berating her over her political activism, her use of profanity at Commission meetings, and the kind of example her conduct set for her students at California State University Los Angeles, where she was Chairman of the Pan-African Studies Department

Defendant CURTIS is the only person on Earth who says that Dr. ABDULLAH grabbed his arm in a harmful and offensive way. He told investigating detectives that since he knew who "Melina" was from seeing her at prior Commission meetings, he "assumed" her contact was deliberate and intentional.

As a legal result of the CURTIS' allegations described above, on or about July 24, 2018, in the case *of People of the State of California v. Meliana Abdullah (Case No. 8CJ10572)*, the Los Angeles City Attorney's Office charged Dr. ABDULLAH in a Misdemeanor Complaint with one count of battery on a police officer, in violation of California Penal Code §§ 242/243, and obstructing a police officer, in violation of Penal Code §148 (a) (1). On or about November 5, 2018, Dr. ABDULLAH filed a Motion to Dismiss for Discriminatory Prosecution the underlying charges filed against her.

On or about August 8, 2019, Los Angeles Superior Court Judge Songhai D. Maguda-Armstead granted the CITY's Motion to Dismiss the above-referenced charges against Dr. ABDULLAH. The CITY agreed to dismiss all charges against Dr. ABDULLAH while her Motion to Dismiss for Discriminatory Prosecution was

still pending. Accordingly, there was a favorable resolution of the criminal charges against her in her favor.

## II. MEMORANDUM OF CONTENTIONS OF LAW

### A. Plaintiff Has Stated A Claim for False Arrest

An arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under Section 1983. *McKenzie v. Lamb,* 738 F.2d 1005, 1007 (9th Cir. 1984). Probable cause to arrest exists when "officers have knowledge or reasonably caution to believe an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio*, 379 U.S. 89 (1964)) "While conclusive evidence of guilt is of course not necessary under this standard to establish probable cause, 'mere suspicion, common rumor, or even strong reason to suspect are not enough." *Id*. (quoting *McKenzie*, 738 F.2d at 1008). Under the collective knowledge doctrine, in determining whether probable cause exists for arrest, courts look to "the collective knowledge of all the officers involved in the criminal investigation." *United States v. Ramirez*, 473 F.3d 1026, 1032 (9th Cir. 2007) (citation and quotation marks omitted). Where the facts or circumstances surrounding an individual's arrest are disputed, the existence of probable cause is a question for the jury. *McKenzie*, 738 F.2d at 1008. That is the case here.

Dr ABDULLAH alleges that she was falsely arrested -- the right to be free of which is "clearly established." Federal case law and California Penal Code § 847 state that for an arrest to be lawful, a "peace officer, at the time of the arrest, [must have] reasonable cause to believe the arrest was lawful." The unlawfulness of arresting someone without reasonable (or probable) cause is apparent to any "reasonable officer." Additionally, the continued pursuit, detention, arrest, and investigation into Dr. ABDULLAH for battery and interference -- in spite of the exculpatory confession of another party -- further violated a well-established right. It

is a well-established violation of law in the Ninth Circuit for law enforcement "[d]efendants [to] continue[] their investigation of [a plaintiff] despite the fact that they knew or should have known that [she] was innocent." *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

The inquiry for the jury will be whether probable cause existed. Defendant CURTIS claims that Dr. ABDULLAH grabbed him, so hard that he had to violently yank his arm free from her "C" clamp grasp.

Dr. ABDULLAH, however, has always maintained that she never grabbed Defendant CURTIS, and if she touched him, it was unintentional. Furthermore, Dr. ABDULLAH's witnesses confirm that she did not touch him. There is no evidence, outside of the self-serving statements of the Defendant, to prove that ABDULLAH touched the officer. In fact, the Defendants filed two videos as evidence in support of their Motion for Summary Judgment. Nothing in these videos show ABDULLAH assaulted or battered the Defendant.

Dr. ABDULLAH has long been a devotee of the non-violent teachings of the Rev. Dr. Martin Luther King, Jr. That spirit was instilled in her as a young child by her mother, Ms. Linda Blackston, who was an activist for justice her entire life. So, to be charged with a crime of violence was a particularly hurtful allegation; contrary to the very essence of who she is as a mother, daughter, an activist.

**B. Plaintiff's Damages Claim Is Best Considered in a Non-Bifurcated Trial**

Plaintiff's counsel has been informed of this Court's intention to bifurcate the liability portion of the trial from damages potion of the case. Dr. ABDULLAH argues that the efficient administration of this trial is enhanced by a non-bifurcated action.

///

///

In addition to calling the percipient five police witnesses to briefly confirm the prior statements that they have already given to investigators on the day of the arrest, Plaintiff will also call Defendant CURTIS, who will likely take the longest time on the witness stand, of any of the percipient witnesses. Gina Viola will also be called in Plaintiff's case in chief to confirm what he saw that morning.

Plaintiff's mother, Ms. Blackston, Molly Tolbert, a colleague of hers at the University, Paula Minor, a close personal friend, will each be called as witnesses at trial to confirm Dr. ADBDULLAH's reputation for truthfulness, honesty, and non-violence. These are all relevant issues to Plaintiff's liability claim, especially since she must respond to the credibility challenges endemic to disputing a police detective's versions of disputed facts.

Ms. Blackston is traveling to Los Angeles from her home in Oakland, CA. She will also testify about the emotional impact of this arrest on her daughter based on conversations they had during that time. Counsel would prefer that she testify in one sitting, rather than being called back in any damages phase of the case.

Ms. Minor is Dr. ABDULLAH's closest friend. In addition to confirming the Plaintiff's honesty and reputation for non-violence in the liability phase of the trial, Ms. Minor will also confirm the emotional impact of this particular incident, based on their many conversations.

Det. Abdul-Rahman is the only witness Plaintiff would call in the damages phase who would not otherwise testify in the liability phase of the trial. He will testify that Dr. ABDULLAH waived her rights an was questioned in the "Hard Interrogation" room, where she remained for hours. If he is honest, and he remembers, he will confirm that he never advised her of the battery allegation Defendant CURTIS was making, but questioned her instead about her political activism, and the example that she was setting for her students by her using profanity during Commission meetings addressing the Board.

Dr. ABDULLAH will testify, if allowed, to the emotional impact of the interrogation given the confusion from not understanding why she was being held for over six hours. Dr. ABDULLAH does not intend to call any health care professionals, or any other additional witnesses to confirm the quality of her emotional health damages.

The Defendants have listed no witnesses who have any admissible evidence concerning Dr. ABDULLAH's damages, so bifurcating the trial would have no impact on their defense whatsoever. Since the Defendants never bothered to depose Dr. ABDULLAH, their defense of her damages claim will likely be brief.

Since there is only one witness who would testify in the damages portion of a bifurcated case, whom the parties would not otherwise call in a non-bifurcated trial, Plaintiff maintains the interests of justice are better served by allowing the witnesses to testify about the damages evidence they are prepared to offer, in one sitting, rather than having them return to court on a different day to testify again. This will not be a complicated or extensive damages claim. The harm Dr. ABDULLAH suffered will be revealed through her testimony and those two women who know her best.

Counsel has prepared this trial with the Court's reputation for efficiency in mind. Counsel deposed eight police officer witnesses in one day, no deposition lasting longer than one hour. Counsel will conduct himself in a similarly efficient manner in a non-bifurcated trial.

It is in that spirit that counsel asks for five hours of trial time to present the evidence portion of Dr. ABDULLAH's non-bifurcated trial. Counsel also asks for 30 minutes maximum for opening statement, and one-hour for closing and rebuttal arguments, combined.

/ / /
/ / /
/ / /
/ / /

8
PLAINTIFF'S AMENDED TRIAL BRIEF

Counsel also asks for a maximum of 30 minutes of attorney conducted voir dire, per side. Both counsel are experienced trial lawyers, and will use that time to ask non-repetitive questions that will assist the reasonable use of their peremptory challenges.

Respectfully submitted,

Dated: March 21, 2022

**DOUGLAS / HICKS LAW, APC**

By:  /s/ Carl E. Douglas
     CARL E. DOUGLAS, Esq.
     JAMON R. HICKS, Esq.
     *Attorneys for Plaintiff*